UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DR. ARMANDE GIL,

                            Plaintiff,                       **MEMORANDUM & ORDER**

           -against-                                    **17-CV-942 (NGG) (PK)**

BERNARD & YAM, L.L.P., and PETER
HELDER BERNARD,

                            Defendants.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Dr. Armande Gil brings this action against Defendants Bernard & Yam, L.L.P. (the "Law Firm") and Peter Helder Bernard ("Bernard," and together with the Law Firm, "Defendants") alleging legal malpractice based on numerous claimed errors in the preparation and processing of Plaintiff's application for a Specialty Occupation Nonimmigrant ("H-1B") visa and a "green card." (Compl. (Dkt. 1).) Plaintiff claims that, because of these alleged errors, she has lost her employment, legal immigration status, and ability to obtain future forms of lawful entry into the United States. (Id. ¶¶ 84, 87, 92.)

      Before the court is Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction, improper venue, and failure to state a claim (the "Motion"). (Mot. to Dismiss. ("Mot.") (Dkt. 17).) For the reasons that follow, the Motion is DENIED.

I. **BACKGROUND**

A. **Factual Background**

The following facts are drawn from Plaintiff's Complaint and are assumed to be true for the present motion.

Plaintiff is a French citizen and, at all times relevant to the allegations, was a resident of the District of Columbia. (Compl. ¶ 1.) Plaintiff is a clinical psychologist who, until her removal, worked for the IMA Group ("IMA") in Washington, D.C. The Law Firm is a New York limited liability partnership, operating in Queens, New York. (Id. ¶ 2.) Bernard is an attorney practicing immigration law in both Miami, Florida, and Queens, New York. (Id. ¶ 3.) Bernard is a founding partner of the Law Firm. (Id.)

As background to her Complaint, Plaintiff describes certain aspects of H-1B visas. An H-1B visa permits the holder to work for a "sponsor" employer and remain in the United States lawfully for a period specified by the H-1B approval notice. (Id. ¶ 8.) When the visa holder ceases working for the sponsoring employer, their H-1B "status" officially ends, and they begin accruing days of "Unlawful Presence" ("ULP") at the end of the period designated in the approval notice. (Id. ¶ 17.) If, however, the visa holder files a petition to change the employer on their H-1B visa, they do not accrue any ULP during the processing period. (Id.) When United States Customs and Immigration Services ("USCIS") approves a petition to extend or alter the employer on an H-1B visa, it can either grant the extension immediately while the individual is in the United States or, alternatively, approve the individual for "Consular Processing," requiring the individual to return to their home country for approval of the visa. (Id. ¶¶ 18-19.) Approval for "Consular Processing" conveys no immigration status to the applicant, and the individual begins accruing ULP for time spent in the United States between approval and the individual's return to their home country. (Id. ¶ 19.) Accrual of ULP has

consequences for an individual's ability to obtain future visas: If the individual accrues 180 to 364 days of ULP, they are barred from reentering the United States, even with a visa, for 3 years; and if the individual accrues 365 or more days of ULP, they are barred from reentering the United States for 10 years. (Id. ¶ 19.)

On or about the first week of October 2013, Plaintiff retained Defendants to represent her before USCIS in filing an extension of her H-1B visa and changing her sponsoring employer to the Hospital for Sick Children in Washington D.C. ("HSC"). (Id. ¶¶ 6, 8.) At that time, Plaintiff held an H-1B visa that was valid until December 1, 2014. (Id. ¶ 9.) Bernard submitted the petition on Plaintiff's behalf but, within two months, USCIS rejected the submission for failure to include all requisite filing fees. (Id. ¶ 13.) Defendants sent a corrected submission, and USCIS approved the petition for consular processing, valid for the period from February 9, 2015, to December 6, 2016. (Id. ¶¶ 15, 20.)

When Defendants' employee, Pascal Despradel, informed Plaintiff of the approval, he did not inform Plaintiff that (1) she needed to return to Paris to obtain a new visa; (2) the approval did not confer on her any legal immigration status; and (3) she would begin accruing ULP as of the date of approval, February 13, 2015. (Id. ¶¶ 21-25.) In fact, Despradel incorrectly informed Plaintiff that the approval had extended her H-1B "status" and that she could remain in the country and work for HSC until December 6, 2016. (Id. ¶ 26.) (Id. ¶ 22.) Following that advice, Plaintiff states that she thus began accruing ULP on February 13, 2015, without her knowledge,[1] and did not return to Paris to obtain the H-1B visa extension. (Id. ¶¶ 21, 30-34.)

---

[1] As discussed later, Defendants contend that Plaintiff's accrual or non-accrual of ULP is a matter to be determined at an administrative proceeding. (Mem. in Supp. of Mot. ("Mem.") (Dkt. 17-1) at 10.)

3

Plaintiff's employment with HSC ceased in March 2015 and, in May 2015, she began working for IMA. (Id. ¶¶ 30-31.) While negotiating her employment with IMA in or about the beginning of May 2015, IMA informed Plaintiff that she should file a petition with USCIS to change the employer on her H-1B visa. (Id. ¶ 35.) When Plaintiff relayed this recommendation to Bernard, he "emphatically" and erroneously advised both Plaintiff and IMA that no petition was necessary due to the "portability law." (Id. ¶ 35.)

IMA also agreed to sponsor Plaintiff for a "green card,"[2] and Plaintiff retained Bernard to assist with that process in June 2015. (Id. ¶¶ 43.) In connection with that application, Bernard filed a "PERM application."[3] (Id. ¶ 43.) Plaintiff alleges that Defendants made several mistakes in filing the PERM application, including using an outdated form and failing to follow certain procedural steps required by the Department of Labor.[4] (Id. ¶¶ 44-47.) Because of the errors in the filing, the Department of Labor notified Defendants of its intention to deny Plaintiff's PERM application and requested further documentation. (Id. ¶ 48.) On Bernard's advice, Plaintiff withdrew the first application and submitted a second PERM application. (Id. ¶¶ 54.) Defendants received a request for further information in connection with this second application

---

[2] While the Complaint does not provide any additional information regarding what is meant by "green card," the court understands Plaintiff to be referring to a permanent resident visa. See USCIS, Green Card, www.uscis.gov/greencard (last visited Jan. 5, 2018).

[3] The Complaint does not elaborate on the use of a "PERM Application" other than to say that it is processed by the Department of Labor and is a prerequisite to filing an application for a green card. (Id. ¶ 37.) Plaintiff appears to be referring to the process for obtaining a certification from the United States Department of Labor that "there are not sufficient U.S. workers able, willing, qualified, and available to accept the job opportunity in the area of [the applicant's] intended employment and that employment of the foreign worker will not adversely affect the wages and working conditions of similarly employed U.S. workers." U.S. Dep't of Labor, Permanent Labor Certification, https://www.foreignlaborcert.doleta.gov/perm.cfm (last visited Jan. 5, 2017). This is a prerequisite to obtaining an employer-sponsored green card from USCIS. Id.

[4] As part of the permanent labor certification process, the sponsoring employer must verify that the "offered wage equals or exceeds the prevailing wage determined pursuant to [20 C.F.R.] § 656.40," and that the offered wage "is applicable at the time the alien begins work or from the time the alien is admitted to take up the certified employment." 20 C.F.R. §§ 656.10(c)(1), 656.17.

4

and, after they both failed to respond or to notify Plaintiff of the request, the application was terminated. (Id. ¶¶ 64-74.)

On November 25, 2016, Plaintiff terminated Bernard as her counsel and retained new counsel. (Id. ¶¶ 27, 90.) Plaintiff's newly retained attorney informed her that she had been out of status and unlawfully present in the United States since February 13, 2015, accruing more than 365 days of ULP during that time. (Id. ¶¶ 85-86.) Plaintiff claims that, by remaining in the United States for more than 365 days, she had become ineligible to obtain a green card. (Id. ¶ 86.) In December 2016, Plaintiff's new attorney filed a petition with USCIS to change her sponsoring employer to IMA and to extend her H-1B status beyond December 6, 2016. (Id. ¶ 84.) While USCIS approved the change of employer petition, it denied her request to extend Plaintiff's H-1B visa on the grounds that she had accrued more than 365 days of ULP. (Id. ¶ 84.) Shortly thereafter, IMA terminated Plaintiff's employment on the basis that she was unlawfully present in the United States. (Id. ¶ 92.)

B. Procedural History

Plaintiff commenced the present diversity action on February 17, 2017. (See generally id.) Plaintiff brings a single claim for legal malpractice, and seeks damages in the amount of $1.5 million. (Id. at p.21.) In lieu of filing an answer, Defendants moved to dismiss the claim on May 25, 2017. (Mot.)

II. DISCUSSION

Defendants now move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), improper venue pursuant to Federal Rule

5

of Civil Procedure 12(b)(3), and failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] (See generally Mot.)

A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question. See Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963). Accordingly, the court turns first to Defendants' argument that subject matter jurisdiction is lacking in this court, and then addresses Defendants' arguments that Plaintiff has failed to state a claim and that this district is not the proper venue for this action.

### A.   Subject Matter Jurisdiction

Defendants first argue that Plaintiff's malpractice claim is not ripe for adjudication because immigration authorities have not yet initiated removal or other proceedings against her. (Mem. in Supp. of Mot. ("Mem.") (Dkt. 17-1) at 4, 10.) In particular, Defendants contest Plaintiff's allegation that she has accrued ULP, arguing that such a determination can only be made at a removal or other administrative proceeding before USCIS. (Id. at 10; see also Def. Reply ("Reply") (Dkt. 19) at 5.) Moreover, Defendants maintain that, even if Plaintiff was determined to have acquired ULP in excess of 365 days at a removal proceeding, the adjudicative officer might waive that ground for excluding her from obtaining a new visa or requiring her removal. (Reply at 5 (citing 8 C.F.R. § 212.7(e)).) As such, Defendant contends that Plaintiff's claims will not ripen until Plaintiff has been subject to removal or other administrative proceedings to determine her status. (Id.) In response, Plaintiff notes that the

---

[5] Defendants also purport to move for dismissal based on lack of personal jurisdiction. (Mot.) They do not, however, present any arguments or facts as to why personal jurisdiction may be lacking, and so the court treats that grounds for dismissal as waived. Cf. State Street Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in an appellant's brief, we consider those arguments abandoned.").

6

injuries that form the basis for her legal malpractice claim are not limited to those based on future adverse immigration consequences, and include harms such as loss of employment that she has already suffered as a result of being "out of status" and unable to extend her H-1B status. (Pl. Opp'n to Mot. ("Pl. Opp'n") (Dkt. 18) at 22-23.) In support of this point, Plaintiff provides USCIS's January 2017 letter denying her application to extend her H-1B status, which states that (1) its decision may not be appealed; and (2) any motion to "reconsider" or "reopen" the denial must "state [] new facts to be considered" or "show that the decision was legally incorrect according to statue, regulation, and/or precedent decision." (Ex. N to Pl. Opp'n ("USCIS Letter") (Dkt. 17-12) at 2.)

1. Legal Standard

    a. *Motions to Dismiss for Lack of Subject Matter Jurisdiction*

"A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Raymond Loubier Irrevocable Tr. v. Loubier, 858 F.3d 719, 725 (2d Cir. 2017) (citing Mantena v. Johnson, 809 F.3d 721, 727 (2d Cir. 2015)). A plaintiff asserting subject matter jurisdiction carries the burden of proving that it exists by a preponderance of the evidence. Makarova, 201 F.3d at 113 (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)). In assessing whether Plaintiff has satisfied this burden, the court "may consider affidavits and other materials beyond the pleadings . . . but [] may not rely on conclusory or hearsay statements contained in the affidavits." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).

*b.     Ripeness*

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks and citations omitted). In its constitutional dimension, ripeness reflects the concern voiced under the standing doctrine that the injury underlying a claim must be "actual or imminent," rather than "conjectural or hypothetical." Id. at 688 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). When considered as a prudential matter, ripeness involves a two-part inquiry, in which the court must review "both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 131-32 (2d Cir. 2008) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)). Under the fitness prong, the court must consider "whether the issues sought to be adjudicated are contingent on future events or may never occur," Isaacs v. Bowen, 865 F.2d 468, 478 (2d Cir. 1989), considering "whether there exists a need for further factual development," Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005). The hardship inquiry considers "whether the challenged action creates a direct and immediate dilemma for the parties," Marchi v. Bd. of Coop. Educ. Servs. of Albany, 173 F.3d 469, 478 (2d Cir. 1999), excluding consideration of uncertain future injuries "unless [they] are the cause of some present detriment," Grandeau, 528 F.3d at 134.

2.     <u>Application</u>

Plaintiff's claim is neither constitutionally nor prudentially unripe. The court might agree that Plaintiff's malpractice claim, if staked solely on the potential for uncertain future determinations or removal proceedings by immigration authorities, would be insufficiently

8

concrete to support jurisdiction.⁶ That is not the situation presented here, however. Instead, Plaintiff's malpractice action cites both potential future injuries as well as harms already incurred as a result of her lack of any legal immigration status. This includes Plaintiff's loss of employment, driver's license, and health insurance, as well as legal costs incurred in seeking to redress errors allegedly committed by Defendants. (Compl. ¶¶ 101(c), (h), (i), (j)). The occurrence of those past harms is obviously not "contingent on future events" or otherwise uncertain. Isaacs, 865 F.2d at 478. Moreover, the USCIS letter cited by Plaintiff makes clear that its denial of her H-1B renewal, at least, is final: USCIS states that its determination may not be appealed and, while it leaves open the theoretical possibility that it could be reopened or reconsidered under limited circumstances, Defendants point to no new facts or legal error that would justify such a reversal. (USCIS Letter.) In the court's view, these harms resulting from these allegations are thus definite, concrete, and capable of review without awaiting some future administrative proceeding, and so satisfy the constitutional and prudential requirements of ripeness. See Garcia v. Boyar & Miller, P.C., No. 3:06-CV-1936-D, 2007 WL 2428572, at *5 (N.D. Tex. Aug. 28, 2007) (finding plaintiff's legal malpractice claim based on loss of employment and potential future immigration consequences was ripe); cf. also Patel v. USCIS, 732 F.3d 633, 638 (6th Cir. 2013) (holding that an applicant "'los[es] a significant opportunity to receive an immigrant visa'" when USCIS denies an immigration petition, and "[t]hat lost

---

⁶ While Defendants maintain that Plaintiff's ULP could only be determined at an administrative removal proceeding (Def. Mem. at 10), they fail to provide any basis for this contention. Because the court concludes that Plaintiff's legal malpractice claim is ripe because of injuries that do not rely on future determinations of ULP or visa eligibility, it need not determine whether Plaintiff's allegations regarding her accumulation of ULP are in fact correct.

opportunity is itself a concrete injury" sufficient to satisfy constitutional standing requirements (quoting Abboud v. INS, 140 F.3d 843, 847 (9th Cir. 1998)).[7]

Accordingly, the court concludes that Plaintiff's claims satisfy both the constitutional and prudential requirements of ripeness and denies Defendants' motion to dismiss for lack of subject matter jurisdiction.

### B. Failure to State a Claim

Relying on points that mirror their ripeness arguments, Defendants assert that Plaintiff has failed to state a claim for legal malpractice upon which relief may be granted. Defendants maintain that, because Plaintiff's claims are contingent on as-yet-unsettled determinations—namely, adjudication of her immigration status or accrual of ULP in some future administrative proceeding—she cannot demonstrate that she has suffered any damages caused by Defendants at this time. (Mem. at 11-12.) For largely the same reasons as those set forth in its discussion of ripeness, the court finds these arguments to be unpersuasive.

#### 1. Legal Standard

##### a. Motions to Dismiss

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

[7] Defendants also argue that Plaintiff lacks standing because she alleges only a "procedural harm." (Mot. at 2.) Defendants appear to misunderstand the scope of the limitations on procedural harms, which are concerned with whether a plaintiff can claim a concrete harm to a personal interest based on a failure to follow statutorily mandated procedures. Cf. e.g., Lee v. Bd. of Governors of the Fed. Reserve Sys., 118 F.3d 905, 911 (2d Cir. 1997). That limitation is simply not applicable to claims such as those presented here, which involve Defendants' alleged tortious malpractice and not a duty mandated by statute.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted).

### b. *Legal Malpractice Under New York Law*

"In order to prevail on a claim of legal malpractice under New York law, a client must demonstrate that the attorney was negligent, that the negligence was a proximate cause of the injury and that the client suffered actual and ascertainable damages." Rubens v. Mason, 387 F.3d 183, 189 (2d Cir. 2004) (citing McCoy v. Feinman, 785 N.E.2d 715, 718-19 (2002)) (footnote omitted). "[T]o establish the elements of proximate cause and actual damages, . . . the client must meet the 'case within a case' requirement, demonstrating that 'but for' the attorney's conduct the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages." Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 780 N.Y.S.2d 593, 596 (N.Y. App. Div. 2004); see also Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010) ("To establish the elements of proximate

11

cause and actual damages for a claim of legal malpractice, the plaintiff must show that 'but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome.'" (quoting Zarin v. Reid & Priest, 585 N.Y.S.2d 379, 381 (N.Y. App. Div. 1992))). As a result of this "case within a case" requirement, no malpractice claim may be asserted where the subject matter of the representation remains unsettled. Stonewell Corp., 678 F. Supp. 3d at 214.

2. Application

After review of the Complaint, the court concludes that Plaintiff has sufficiently alleged a claim for legal malpractice. In essence, Defendants' argument is that Plaintiff fails to assert either proximate cause or damages because the harms that underlie her claim are based entirely on administrative actions that either have not been completed or, in the case of removal proceedings, have not been initiated. Defendants again overlook the numerous other injuries that Plaintiff claims to have sustained that have already occurred and which are not contingent on any future event, discussed in greater detail above. (Compl. ¶¶ 92, 101(b), (c), (g)-(j).) Plaintiff alleges that these injuries resulted directly from Defendants' errors made in connection with Plaintiff's applications for various visas and her resulting lack of any immigration status. (Id. ¶¶ 84-85, 92, 100.) These harms, and Plaintiff's allegations explicitly linking those harms to Defendants' actions, are sufficient to satisfy her burden at this point. Even Street Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008) (holding that, when evaluating a legal malpractice claim on a motion to dismiss, the question is whether the Plaintiff has "allege[d], not prove[n], the proximate cause element of the . . . claim.").

Accordingly, the court denies Defendants' motion to dismiss the complaint for failure to state a claim.

## C. Venue

Defendant next moves pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss the Complaint for improper venue. Plaintiff contends that venue is proper in this district because, during the relevant period, Bernard practiced law and provided Plaintiff with incorrect legal advice while working out of the Law Firm's office in Queens, New York. (Pl. Opp'n at 17-19.) Defendants contest these claims, arguing that the alleged malpractice could only have occurred in the location in which the sponsoring employers were located—i.e. Florida and Washington, D.C.—and that, in any event, none of the relevant filings were prepared in the Eastern District of New York. (Mem. at 6-9.)

### 1. Legal Standard

Plaintiff contends that venue in this district is proper under 28 U.S.C. Section 1391(b)(2), which states that:

> A civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is subject of the action is situated[.]

28 U.S.C. § 1391(b)(2). Determining whether venue under this provision is proper requires a two-step inquiry: The court first "identif[ies] the nature of the claims and the acts or omissions that the plaintiff alleges gives rise to those claims" and, second, determines "whether a substantial part of those acts or omissions occurred in the district where suit was filed." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005). In order to be "substantial" under this requirement, "significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the

13

plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Daniel, 428 F.3d at 432-33.

Where venue is challenged pursuant to Rule 12(b)(3), "the plaintiff bears the burden of establishing that venue is proper." French Transit, Ltd. v. Modern Coupon Sys. Inc., 858 F. Supp. 22, 25 (S.D.N.Y. 1994). In considering a motion to dismiss for improper venue, the court may choose to rely solely on the pleadings and affidavits, at which point the plaintiff "need only make a prima facia showing of [venue]," or, in the alternative, it may hold an evidentiary hearing, during which "the plaintiff must demonstrate [that venue is proper] by a preponderance of the evidence." Gulf Ins. Co., 417 F.3d at 356 (quoting CutCo Indus. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986)) (alterations in original). "[I]f an evidentiary hearing on the question of venue has not been held, the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in [plaintiff's] favor." Zaltz v. JDATE, 952 F. Supp. 2d 439, 448 (E.D.N.Y. 2013) (internal quotation marks and citation omitted).

  2. Application

As noted, at the first step of the venue determination, the court is required to first "identify the nature of the claims and the acts or omissions that the plaintiff alleges gives rise to those claims." Daniel, 428 F.3d at 432. Here, Plaintiff's malpractice claims rely on numerous acts and omissions by Defendants, including incomplete or incorrect preparation of her immigration applications and erroneous legal advice and other communications provided to Plaintiff by Bernard and employees of the Law Firm. (See, e.g., Compl. ¶¶ 6-92.)

Turning to the second part of the inquiry, the court concludes that Plaintiff has sufficiently alleged that a "substantial portion" of the acts and omissions underlying her claim occurred in this district. In the context of legal malpractice claims, venue is proper in the place where the defendants were physically present when performing the work that gives rise to the

14

acts and omissions alleged to constitute malpractice. See, e.g., Cold Spring Harbor Lab. v. Ropes & Gray LLP, 762 F. Supp. 2d 543, 556-57 (E.D.N.Y. 2011) (examining the place where defendants performed legal work and from which they communicated with plaintiff in determining where venue was proper); Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., 927 F. Supp. 731, 736 (S.D.N.Y. 1996) ("Any extortion, malpractice, misrepresentation, fraud/conspiracy, unethical conduct, or breach of fiduciary duty which defendants may have committed against plaintiffs would have been committed in Pennsylvania or Delaware, where defendants reside and where they prepared for and litigated the Underlying Action."). While the complaint does not explicitly link each specific allegation with particular locations, it alleges generally that Plaintiff's immigration applications were prepared by the Queens-based Law Firm and that "during the period of time relevant to this litigation, Bernard practiced law out of his office in Queens, N.Y." (Compl. ¶ 3, 5.) These general allegations support the inference that at least a substantial part of the work on Plaintiff's immigration applications and communications with her—and so a substantial part of the relevant acts and omissions giving rise to Plaintiff's malpractice claim—occurred in this district, making out a sufficient prima facie showing that venue is proper.

Defendants argue that, rather than focusing on the location where the work alleged to constitute malpractice was performed, the court should look to the place where the benefits of that work were to be incurred—i.e. Plaintiff's location and that of her sponsoring employers. (Mem. at 7.) Defendants' argument fundamentally misstates the focus of the inquiry, which looks not to the location of the plaintiff or the beneficiary of the work but instead to "where the defendant's acts or omissions occurred." Prospect Capital Corp. v. Bender, No. 09-CV-826 (HB), 2009 WL 4907121, at *3 (S.D.N.Y. Dec. 21, 2009) (emphasis in original); see Cold

15

Spring Harbor Lab., 762 F. Supp. 2d at 556-57 (rejecting proposed focus on location of plaintiff or subject of the representation in favor of location where work was performed or representation was provided). In other words, it is the place where Defendants performed (or failed to perform) legal tasks in furtherance of the representation, and not the place where Plaintiff stood to benefit from that representation, that is relevant to the venue inquiry.

Defendants offer the second contention that, regardless of which actions are relevant to the venue inquiry, the Law Firm did not in fact provide any representation to Plaintiff. (Mem. at 9.) Instead, Defendants state that "all of the administrative filings of which Plaintiff complains were filed by" two other, similarly named law firms in Florida with which Bernard is also associated. (Id.; see also Decl. of Peter H. Bernard (Dkt. 17-2).) This argument, too, is misplaced in the present inquiry: Defendants do not contend that, if taken as true, the acts alleged in the complaint would not provide a basis for concluding that venue is proper, but instead argue simply that the Law Firm did not do the acts alleged. As noted above, however, the court is required at this stage to "accept[] facts alleged in the complaint as true and draw[] all reasonable inferences in [plaintiff's] favor." Zaltz, 952 F. Supp. 2d at 448 (internal quotation marks and citation omitted). While Defendants may re-raise these arguments at a later stage if they wish to do so, the court does not view them as properly laid here.[8]

Accordingly, the court concludes that Plaintiff has properly pleaded venue in this district and denies Defendants' motion to dismiss on that basis.

---

[8] Plaintiff also suggests that venue is proper under Section 1391(b)(1), under which venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b)(1). Because the court concludes that venue is proper under Section 1391(b)(2), it does not address this alternate argument here.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint (Dkt. 17) is DENIED. The parties are directed to proceed to pretrial supervision before Magistrate Judge Peggy Kuo.

SO ORDERED.

Dated: Brooklyn, New York
      January 12, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge